THIMESCH LAW OFFICES
TIMOTHY S. THIMESCH, ESQ., No. 148213
tim@thimeschlaw.com
158 Hilltop Crescent
Walnut Creek, CA 94597-3452
Tel: 925/588-0401

Attorneys for Plaintiff HOLLYNN D'LIL

JAMES SANCHEZ, City Attorney (SBN 116356)
**KATHLEEN ROGAN, Senior Deputy City Attorney (SBN 186055)**
CITY OF SACRAMENTO
Mailing: P.O. Box 1948, Sacramento, CA 95812-1948
Office: 915 I Street, 4th Floor, Sacramento, CA 95814
Telephone: (916) 808-5346
Facsimile: (916) 808-7455

Attorneys for Defendant CITY OF SACRAMENTO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLYNN D'LIL,<br><br>     Plaintiff,<br><br>v.<br><br>RIVERBOAT DELTA KING, INC.;<br>CITY OF SACRAMENTO; [OLD<br>SACRAMENTO BUSINESS<br>ASSOCIATION, INC.]; and DOES 1<br>through 50, Inclusive,<br><br>     Defendant. | Case No. 2:11-CV-02230-WBS-CA<br>Civil Rights<br><br>**FULL CONSENT DECREE ORDER AND JUDGMENT AGAINST DEFENDANT CITY OF SACRAMENTO** |

## INTRODUCTION

1.      Plaintiff HOLLYNN D'LIL has a physical disability that requires the full time use of a wheelchair for mobility.

2.      Defendant CITY OF SACRAMENTO owns the boardwalk and wharf area proceeding along the waterfront of the Sacramento River, and, for purposes of these related actions, covers the waterfront area proceeding between J and L Streets.  It also owns the Aft Service Ramp and K Street Landing Barge, which together are known in this action as the Access Infrastructure, as well as the adjacent pleasure-boat docking area known in this action as the Head Pier.  This action also pertains to Defendant's ownership and/or lease of certain

**Full Consent Decree Order and Judgment:**                                        Exhibit 1 — Page 1

appurtenances within this area, including, but not limited to, the paths of travel extending from front Street and leading to the waterfront businesses Joe's Crab Shack, Rio City Café and Delta King Hotel, as well as its valet parking. Collectively, all of these areas shall be referred to herein as the "Boardwalk."

3. Plaintiff filed this action for herself and all other similarly situated members of the public to vindicate their rights under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and Civil Code Section 54 and 54.1. Plaintiff alleges that Defendant violated these statutes by failing to provide full and equal access. Specific identification of the facilities and their deficiencies were identified in the Complaint in the first action filed on August 23, 2011, and in the second action on December 12, 2014.

4. In each action, Plaintiff alleges that the boardwalk has undergone construction triggering the requirement of full compliance with regulations in the altered areas, and are otherwise required by Defendant's obligations for providing accessible programs, services and activities. Defendant denies all the charges.

5. The subject parties enter this Full Consent Decree Order and Judgment (hereafter "Consent Decree") in order to fully resolve the issues, claims and defenses in these related actions.

**STIPULATIONS**

6. **Plaintiff's Qualified Disability.** Plaintiff qualifies as "a person with a physical disabilities" as defined by the relevant statutes.

7. **Plaintiff's Status as Aggrieved and Potentially Aggrieved.** Plaintiff HOLLYNN D'LIL alleges she has standing to bring this action, that she currently lives in Graton, California, but that until relatively recently, she lived for decades in Sacramento, that she still regularly conducts personal, business and political affairs in Sacramento including within the Old Town District. Her activities there include dining and shopping, and a prior attempt to stay at the Delta King Hotel. While the City of Sacramento does not admit all of the

foregoing allegations, it agrees that its representatives have knowledge of sufficient verified facts to support Plaintiff's qualification as "aggrieved and potentially aggrieved" under the relevant statutes, and for her individual standing under Article III of the U.S. Constitution.

8. **Alteration History and Programs, Services and Activities.** The parties stipulate that all the subject areas identified herein as the Boardwalk were installed in the late 1980s and hence is subject to the requirements of Government Code sections 4450, 4456; Civil Code Section 54.3 and Title 24, Part II, of the California Code of Regulations, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794, and the governing UFAS regulations.

9. **Scope of Facilities in Issue.** The following are the facilities of the Boardwalk affected by this Full Consent Decree: including, but not limited to: the accessible route from the public sidewalk and boundary of the site on Front Street to the main entrance of Joe's Crab Shack, Rio City, and the Delta King Hotel, the two elevated viewing decks, the access to the ramps and elevator tower serving the Delta King Hotel, the valet parking serving the Delta King, and the paths of travel across the train tracks, and the head pier running along the full length of the Delta King.

## JURISDICTION

10. The facts requisite to federal jurisdiction are admitted.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 for the alleged violations of the ADA, 42 U.S.C. §§ 12101, et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794. Article III jurisdiction is proper due to each Plaintiff's continued exposure and use of the Boardwalk.  Pendant jurisdiction of the state law claims arises from a common nucleus of fact and is proper.

11. This Court shall have continuing jurisdiction to interpret and enforce this Full Consent Decree until Defendant have fulfilled all conditions hereunder.  This agreement is contingent upon Court-acceptance of this continuing jurisdiction.

12. The parties agree to entry of this Full Consent Decree in order to resolve the below listed allegations raised in the Complaint filed with this Court on August 23, 2011.

Accordingly, the parties agree to this Full Consent Decree without trial or further adjudication of any issues of fact or law concerning the issues specified herein Full Consent Decree Judgment and Order.

13. In entering this Full Consent Decree, Defendant agree this Full Consent Decree fully vindicates Defendant's violation of Plaintiff's rights under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Civil Code Section 54 and 54.1 as to the matters covered herein.

WHEREFORE, the parties hereby agree and stipulate to the Court's entry of this Full Consent Decree Judgment and Order, which provides as follows:

## SCOPE OF RESOLUTION

14. This Full Consent Decree shall be a full, complete, and final disposition of only the matters covered herein. This Full Consent Decree was reached through negotiations between the Subject Parties. The Court shall retain jurisdiction of this action to enforce and interpret its terms.

## AGREEMENTS CONCERNING INJUNCTIVE RELIEF

15. **Specific Agreed Remediations.** Defendant City of Sacramento agrees it shall perform the following work to bring the subject Boardwalk facilities into full compliance with statutory accessibility requirements:

a. Defendant shall replace all surface boards forming the Boardwalk, which is acknowledged to be presently comprised of wooden planks with an irregular surface, with a material that is smooth and level, and whose installation has no sudden change of rise greater than ½ inch or ¼ inch beveled. (2007-CBC §1131A.1; ADAAG §4.5.2.) Defendant agrees to make a capital allocation of approximately $2.5 million for this purpose, and another allocation of approximately $1.2 million for the associated repairs to the K Street Landing Barge.

b. After performance of the work described in subparagraph (a), supra, Defendant shall maintain the accessible features of the Boardwalk's surface. (28 CFR 35.133 (a).)

    c. Defendant shall install a new or modified path of travel leading between the boardwalk and the Delta King's main, third-floor hotel entrance, which at all river heights shall comply with all current Title 24 and ADAS requirements applicable to "Ramps" (see 2013-CBC §11B-405 et seq. and ADAS §405 et seq.), except for temporary and isolated instances due to extreme river height at the flood stage of 23 feet or greater above mean-low-low tide, or, alternatively, install another compliant means of vertical-disabled-access at this location.  As a third option, Defendant may permanently close the current Aft Ramp from public use through a locked gate at the top wharf-entry point that shall restrict use of the ramp to employee, vendor, service or City personnel, and which shall also be equipped with alarmed-panic hardware on the gate's interior, which shall permit public use only in the event of an emergency.  (Note, also see paragraph 18, infra, as to "Option to Close Facilities," and the springing obligation imposed if such facilities should later be reopened for public use, which shall include the closure option specified in this paragraph.)

    d. Defendant shall provide compliant valet, passenger loading, and accessible reserved-self-parking facilities meeting the requirements of the California Building Code (CBC) and/or the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

    e. Defendant shall provide parking spaces that are level within 2% in all directions, and that are marked and delineated and signed, all as required by code.  (CBC §1129B; ADAAG §4.6.3 §1129B.3 #.)

    f. Defendant shall provide path of travels from the foot of J, K and L Streets across the railroad tracks that have no slope within them exceeding 5%.  (2007-CBC §§ 1114B.1.2 & 1128B; and ADAAG §§ 4.3.2 & 4.3.7).

    g. Defendant shall provide paths of travel from the foot of J, K and L Streets across the railroad tracks that are level and flush and without gaps on the outer edge greater than that permitted by code (i.e., no greater than 2 ½ inches wide on the inner edge) (2007-CBC §1121B.3.1(13) and §ADAAG §10.3.1(13)), and which otherwise do not have sudden vertical rises that greatly exceed ¼ inch maximum, or ½ inch beveled, as required by code. (2007-CBC §1131A.1; ADAAG §4.5.2.)

  h. Defendant shall modify the paths of travel to the two viewing platforms to ensure that they are fully comply with the requirements and features for an "accessible ramp."  (2007-CBC §1133B.5 et seq.; ADAAG §4.8 et seq.).

  i. In relation to the lower path of travel serving the base of the elevator barge, and more specifically at the area near the sloped ramp serving the path to the aft, second-deck entrance of the Delta King, and also for the area on opposite side, which currently provides a sloped path of travel to the Horn-Blower Yacht, Defendant shall modify both of these areas so that no slope within them exceeds 5% in the direction of travel; or, alternatively, Defendant shall modify these areas so that they fully comply with the code requirements for ramps, and with no slope exceeding 8.3%, and with proper handrails, wheelguides, etc.  (2007-CBC §1133B.5 et seq.; ADAAG §4.8 et seq.).

  j. Defendant shall close the risers on the staircase flights leading from the elevator deck K-Street Landing Barge and down to the event space, and shall have the upper approach and all treads marked by a stripe providing clear visual contrast.

  k. Defendant shall close the risers on the staircase flights leading from the barge-event-area up to the Delta King's forward third floor entrance, and shall have the upper approach and all treads marked by a stripe providing clear visual contrast.

  l. At the steps coming off the sidewalk near the valet booth, Defendant shall have the upper approach and all treads marked by a stripe providing clear visual contrast.

  m. Defendant shall demarcate a crosswalk across the valet area to denote the continuation of the public sidewalk.  The Parties agree that such demarcation may coincide with the new passenger loading area called for within this agreement, supra, at subparagraph d.

  n. Defendant shall also install signage at appropriate locations on either side of the turn-around directing disabled users toward the continuation of the public sidewalk.

 16. **Performance Standards.** All of the foregoing facilities shall be brought into full and strict compliance with the literal performance standards for altered facilities under the Americans with Disabilities Standards for Accessible Design, effective March 15, 2011, and under California's Title 24, (2013), whichever, for any particular element, provides the

strongest level of protection to persons with disabilities. Defendant also hereby releases all alleged claimed defenses to literal compliance such as undue burden, unreasonable hardship, undue hardship, legal and physical constraint, technical infeasibility, 20% cost-cap, ENE, historical fabric, etc.

17. **Option to Close Facilities.** In lieu of making modification to any particular facility or amenity called for by this decree, the Defendant may choose to permanently close/remove such facility, element or amenity from public use. Such facility, element or amenity shall not be reopened or re-provided for public use without provision of disabled access pursuant to the terms of paragraphs 15 and 16.

18. **Time for Compliance.** All work on the boardwalk, including the valet parking and all areas touching the boardwalk shall be completed within five years of the date of court approval of this Consent Decree. As to all other work, including the aft ramp, Defendant shall complete all such work within three years of the date of court approval of this Consent Decree, allowing for good faith interruptions due to inclement weather, administrative delay in the permitting process of outside entities, contractor unavailability, and other causes under the Doctrine of Force Majeure. Defendant will provide written notice regarding the status of completion within three and one-half years after entry of this Order. Defendant shall then provide Plaintiff, her attorneys and consultants with physical access to inspect, measure and photograph the facilities to verify that the completed work complies with the terms herein.

19. **Enforcement.** Should Plaintiff in the future become aware of any facts or conditions relating to the subject public accommodation that may give rise to a claim that Defendant has failed to comply with any of the injunctive relief provisions set forth herein, Plaintiff agrees to provide the City Clerk with notice of the observed defects and no less than 45 days to investigate and respond to Plaintiff. If the City declines to take corrective action, Plaintiff shall be permitted to file a noticed motion under the current case number of this action seeking enforcement of this Full Consent Decree. The "prevailing party" in such motion proceedings, whether in full or in part, <u>may</u> be entitled to an award of reasonable attorney fees, litigation expenses and costs for such motion, i.e., the fee recovery shall be pursuant to the

normal prevailing party standards that applied under the subject statutes before entry of this decree, under the subject fee shifting statutes named in the complaint and <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412 (1978).  Thus, Defendant <u>may</u> be entitled to recovery of attorney's fees in such proceeding only upon proof that Plaintiff's motion is found to be frivolous or brought in bad faith.

**RESOLUTION OF PLAINTIFF'S CLAIMS FOR DAMAGES**

20.   The City of Sacramento and each plaintiff have already entered a complete written settlement and release of Plaintiff's claims for statutory and compensatory damages – as against the City – on all issues, including without limitation, claims for statutory damages under Title II of the ADA, Section 504 of the Rehabilitation Act, Civil Code Sections 52 and 54.3, and damages for bodily and personal injury.  Plaintiff stipulates to already having received all compensation called for under such settlement.  The Parties stipulate that the foregoing amount was intended to be paid in full to Plaintiff, and understand that no part of it was received by Plaintiff's counsel in compensation for Plaintiff's separate claim for reasonable statutory attorneys' fees, litigation expenses, and costs.

**RESOLUTION OF CLAIM FOR REASONABLE STATUTORY ATTORNEYS FEES, LITIGATION EXPENSES AND COSTS:**

21.   Defendants agree to pay Plaintiff the amount of $370,000 in full satisfaction of Plaintiffs' claims for interim and final claims for reasonable statutory attorney fees, litigation expenses and costs under Section 505 of the ADA [42 USC 12205]; and Civil Code Sections 52 and 54.3.  A check for this amount shall be made payable to "TIM THIMESCH, IN TRUST," and delivered to him within fourteen business days of City Council approval of this settlement.

**FULL CONSENT DECREE JUDGMENT AND ORDER:**

22.   This Full Consent Decree constitutes the entire agreement between the parties on the matters covered, and no other statement, promise, or agreement, either written or oral,

made by any of the parties or agents of any of the parties, that is not contained in this Full Consent Decree Judgment and Order, shall be enforceable regarding the matters described herein.

**CONSENT DECREE BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

23. The parties agree and represent that they have entered into this Full Consent Decree voluntarily, under no duress, and wholly upon their own judgment, belief, and knowledge as to all matters related to it, after having received full advice from counsel.

24. This Full Consent Decree shall be binding on Plaintiff and Defendant and any successors in interest. The parties have a duty to so notify all such successors in interest of the existence and terms of this Full Consent Decree during the period of the Court's continuing jurisdiction to enforce its terms.

**JOINT PREPARATION AND SEVERABILITY:**

25. This Full Consent Decree is deemed jointly prepared by all parties and shall not be strictly construed against any party as its drafter. If any term of this Full Consent Decree is determined by any court to be unenforceable, all other terms shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

26. Signatories on the behalf of the parties represent that they are authorized to bind the parties to this Full Consent Decree.

////

**SIGNATORIES BIND PARTIES:**

27. This Full Consent Decree may be executed in counterpart signatures, and such signatures may be attached in counterparts, each of which shall be deemed an original, and which together shall constitute one and the same instrument. Such counterparts may be signed as faxed signatures, which shall have the same force and effect as original signatures.

Dated: <u>January 15, 2015</u>

                                                 <u>/s/ Authorized Signed – HolLynn D'Lil</u>
                                               HOLLYNN D'LIL

Dated: <u>January 15, 2015</u>

                                               <u>/s/ Authorized Signed - John Shirey</u>
                                             CITY OF SACRAMENTO

                                             By: <u>  John Shirey  </u>
                                             Title: <u> City Manager </u>

////

////

////

**Full Consent Decree Order and Judgment:**                           **Exhibit 1 ─ Page 10**

**APPROVED AS TO FORM:**

Dated: February 3, 2015          THIMESCH LAW OFFICES
                                 TIMOTHY S. THIMESCH

                                 /s/ Authorized Signed
                                 Attorneys for Plaintiff
                                 HOLLYNN D'LIL


Dated: February 3, 2015          JAMES SANCHEZ City Attorney
                                 KATHLEEN ROGAN, Sr. Deputy City Atty.


                                 /s/ Authorized Signed
                                 Attorneys for Defendant
                                 CITY OF SACRAMENTO


**ORDER**

**IT IS SO ORDERED.**


Dated: February 3, 2015          _____
                                 WILLIAM B. SHUBB
                                 UNITED STATES DISTRICT JUDGE